# EXHIBIT W

JS 44 (Rev. 02/19)                    CIVIL COVER SHEET                    12/24/19   Page 1 of 34

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS** American Hypotherapy Society
1536 S Marston St
Phila. PA                              *see attached*

**DEFENDANTS** ABC Capital Investments                *see attached*
303 W ___ St
Phila. PA 19186

**19 6116**

**(b)** County of Residence of First Listed Plaintiff  Phila.
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  Phila.
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Mumin Islam,       HFI Law Group PLLC
Brittany Gardner   7435 Linekiln Pike Ste 2o
Phila. PA 19138

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question *(U.S. Government Not a Party)*
☐ 2 U.S. Government Defendant
☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*                    Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | **IMMIGRATION** | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | ☐ 448 Education | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation - Transfer
☐ 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
18 U.S.C. 7
Brief description of cause:
Securities Fraud & RICO

**VII. REQUESTED IN COMPLAINT:**

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ 1,000,000

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

**VIII. RELATED CASE(S) IF ANY**

*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE  12/24/19

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

DEC 24 2019

**UNITED STATES DISTRICT COURT**
**NORTHERN EASTERN DISTRICT OF PENNSYLVANIA**

19   6116

## DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: American Hypnotherapy Society 1336 S. Merston Phila PA 19146

Address of Defendant: ABC Capital, 305 N. 3rd Street, Phila, PA 19106

Place of Accident, Incident or Transaction: Philadelphia, PA

---

**RELATED CASE, IF ANY:**

Case Number: _____     Judge: _____     Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?    Yes ☐    No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?    Yes ☐    No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?    Yes ☐    No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?    Yes ☐    No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not   related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 12/24/19     _____     208979
                   *Must sign here*
                   *Attorney-at-Law / Pro Se Plaintiff*     *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.**   *Federal Question Cases:*

☐ 1.  Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2.  FELA
☐ 3.  Jones Act-Personal Injury
☐ 4.  Antitrust
☐ 5.  Patent
☐ 6.  Labor-Management Relations
☐ 7.  Civil Rights
☐ 8.  Habeas Corpus
☐ 9.  Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
       *(Please specify):* _____

**B.**   *Diversity Jurisdiction Cases:*

☐ 1.  Insurance Contract and Other Contracts
☐ 2.  Airplane Personal Injury
☐ 3.  Assault, Defamation
☐ 4.  Marine Personal Injury
☐ 5.  Motor Vehicle Personal Injury
☐ 6.  Other Personal Injury *(Please specify):* _____
☐ 7.  Products Liability
☐ 8.  Products Liability – Asbestos
☐ 9.  All other Diversity Cases
       *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, Mimin Idom , counsel of record *or* pro se plaintiff, do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: 12/24/19     _____     208979
                   *Sign here if applicable*
                   *Attorney-at-Law / Pro Se Plaintiff*     *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

DEC 24 2019



# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

|  |  |  |
|---|---|---|
|  | : | CIVIL ACTION |
| v. | : |  |
|  | : | NO. **19  6116** |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.      ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.      ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.      ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)      (✓)

(f) Standard Management – Cases that do not fall into any one of the other tracks.      ( )

| | | |
|---|---|---|
| 12/24/19 | Mumin Islam | Alphabet Philly (All plaintiffs) |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 205-735-2357 | 215-621-7886 | mislam@mfilawgroup.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

DEC 24 2019

**Plaintiffs**

1. American Hypnotherapy Society, LLC 1536 S. Marston Street, Philadelphia, PA

2. Bestview, LLC 6111 Wheeler St., Philadelphia, PA

3. Burwood International Investment, LLC 2934 N. Ringgold Street, Philadelphia, PA.

4. Plaintiff CAN Solution, LLC is a Pennsylvania Limited Liability Company 2030 Plum Street in Philadelphia County of Pennsylvania.

5. D&E HK Company, LLC 38 N. Frazier St. in Philadelphia County of Pennsylvania.

6. Eddie Luk Investments, LLC 2955 N. Bambrey Street in Philadelphia County of Pennsylvania.

7. Fortune Well, LLC is a Pennsylvania Limited Liability Company 5561 Chancellor Street in Philadelphia County of Pennsylvania.

8. IP Global Investment, LLC is a Pennsylvania Limited Liability Company 1830 E. Airdrie Street in Philadelphia County of Pennsylvania.

9. Jessie Investments, LLC is a Pennsylvania Limited Liability Company 5930 Belmar Street in Philadelphia County of Pennsylvania.

10. Lawrence Simple Homes, LLC is a Pennsylvania Limited Liability Company 5715 Malcolm Street in Philadelphia County of Pennsylvania.

11. LPES Investments, LLC is a Pennsylvania Limited Liability Company 1153 S. 54th Street in Philadelphia County of Pennsylvania.

12. Nadiahon, LLC is a Pennsylvania Limited Liability Company 4357 N. 7th Street in Philadelphia County of Pennsylvania.

13. PLES Investments, LLC is a Pennsylvania Limited Liability Company 5213 Westminster Street in Philadelphia County of Pennsylvania.

14. PR Forever Win, LLC is a Pennsylvania Limited Liability 6345 Wheeler Street in Philadelphia County of Pennsylvania.

15. Samfield, LLC is a Pennsylvania Limited Liability Company 311 E. Albanus Street in Philadelphia County of Pennsylvania.

16. SELP Investments, LLC 5624 N. 10th Street in Philadelphia County of Pennsylvania.

17. Standing Moai Investment, 853 N. 47th Street in Philadelphia County of Pennsylvania.

18. Tinwan Company, LLC 1944 E. Birch Street and 2520 S. Felton Street in Philadelphia County of Pennsylvania.

19. Touch Blessing, LLC 2612 S. Bonaffon St. Street in Philadelphia County of Pennsylvania.

20. Vania Bright, LLC 5441 Spruce Street Philadelphia County of Pennsylvania.

21. Whole Win Assets, LLC 121 N. Vogdes Street in Philadelphia County of Pennsylvania.

22. Whole Win Capital, LLC 3629 N. Bouvier Street in Philadelphia County of Pennsylvania.

23. Wind See, LLC 4931 Hoopes Street in Philadelphia County of Pennsylvania.

24. Y L Tang Co., LLC 4851 N. Hutchinson Street in Philadelphia County of Pennsylvania.

25. InvestRealty II, LLC 1428 W. York Street in Philadelphia County of Pennsylvania.

26. InvestRealty III, LLC 5716 Commerce Street in Philadelphia County of Pennsylvania.

27. Sidney Shuay is an individual who resides at 33 Avignon Drive, Morris Plains, NJ 07950 who acquired property address 1607 Harrison Street in Philadelphia County of Pennsylvania.

28. Alphabet Philly, LLC 4850 N Brown Street in Philadelphia County of Pennsylvania.

29. JD CPW, LLC 1955 73rd Street in Philadelphia County of Pennsylvania.

30. Land Winner, 521 N. 58th Street in Philadelphia County of Pennsylvania.

31. Loveg, LLC 1332 N. 59th Street in Philadelphia County of Pennsylvania.

32. Mana International, LLC 1438 N. 27th Street in Philadelphia County of Pennsylvania.

33. TOUT USA, LLC 1617 Wakeling Street  in Philadelphia County of Pennsylvania.

**Defendants**

1. ABC Capital Investments, LLC, 305 N. 3rd Street, Philadelphia, PA 19106
2. ABC Capital Realty, LLC, 305 N. 3rd Street, Philadelphia, PA 19106
3. Philly Acquisitions, LLC, 1218 N. Marshall Street, Philadelphia, PA 19122
4. Giovanni Real Estate, LLC 305 N. 3rd Street, Philadelphia, PA 19106
5. New Philly Construction, LLC 305 N. 3rd Street, Philadelphia, PA 19106
6. Stateside-Philly, LLC, 305 N. 3rd Street, Philadelphia, PA 19106
7. Jason "Jay" Walsh, 305 N. 3rd Street, Philadelphia, PA 19106
8. Karen Lee-Walker, 305 N. 3rd Street, Philadelphia, PA 19106

$400

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALPHABET PHILLY, LLC *et. al.* | ) | **19    6116** |
| | ) | |
| Plaintiff, | ) | COMPLAINT FOR VIOLATION |
| | ) | OF THE FEDERAL SECURITY |
| | ) | LAWS AND RICO |
| | ) | |
| ABC CAPITAL INVESTMENTS, LLC | ) | |
| *et. al,* | ) | DEMAND FOR A JURY TRIAL |
| Defendant. | ) | |
| | ) | |
| | ) | |

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, case involving a federal question.

2.      This Court also has jurisdiction over this action pursuant to Sections 20(b), 20(d)(1) and 22(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77t(b), 77t(d)(1) & 77v(a)], Sections 21(d)(1), 21(d)(3)(A), 21(e) and 27(a) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78u(d)(1), 78u(d)(3)(A), 78u(e) & 78aa(a)], and Sections 209(d), 209(e)(1) and 214(a) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. §§ 80b-9(d), 80b-9(e)(1) & 90b-14(a)].  The Court also has jurisdiction over this action pursuant to sections 18 U.S.C.A. §§ 1961–1968, violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO").

3.      Defendants have, directly or indirectly, made use of the means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange in connection with the transactions, acts, practices and courses of business alleged in this complaint.

1

4.    Venue is proper in this district pursuant to Section 22(a) of the Securities Act [15 U.S.C. §

77v(a)], Section 27(a) of the Exchange Act [15 U.S.C. § 78aa(a)], and Section 214(a) of the

Advisers Act [15 U.S.C. § 90b-14(a)], because certain of the transactions, acts, practices and

courses of conduct constituting violations of the federal securities laws occurred within this district

and the defendant resides in this district.

## INTRODUCTION

5.    This is a securities fraud action on behalf of Plaintiffs who purchased real estate from the

Defendants between 2014-2019.  This action is brought against the Defendants and certain of its

officers and/or directors for violations of the Securities Exchange Act of 1934 ("the 1934 Act")

and Racketeer Influenced and Corrupt Organizations Act ("RICO") 18 U.S.C.A. §§ 1961–1968.

6.    The Plaintiffs are foreign investors who confided in the Defendants to handle their real

estate investments in Philadelphia, Pennsylvania.

7.    The Defendants are a real estate investment company based in Philadelphia, Pennsylvania

who unequivocally held themselves out to be a one-stop shop for overseas and United States real

estate clients.  They were engaged to locate, renovate, and manage properties for hands-off

international and national clients, in order to establish cash-flow producing investment properties.

## SUMMARY OF THE ACTION

8.    This case involves ABC and its affiliates ("Defendants") which entered into multiple false

and misleading agreements with the Plaintiffs regarding the Defendant's guarantee to provide the

Plaintiffs with a fixed return on their investments.

9.    In each real estate transaction, Plaintiffs entered into a real estate transaction with a

guaranteed fixed return in which the seller, renovators, property manager, and the warrantors were

all owned and operated by the same individuals.

2

10.     ABC used Investor funds to make regular and/or requested distributions to Foreign Investors, which reinforced the false narrative the Foreign Investors' funds were adequately invested and available to withdraw.

11.     This false narrative enabled ABC to convince The Foreign Investors to keep their money invested and/or re-invest when their existing investments purportedly "matured."

12.     ABC operates a typical Ponzi scheme by utilizing new investor's investments to distribute to pre-existing investors owed a guaranteed fixed return.

13.     As a result of the Defendants' false and misleading statements, the Plaintiffs' acquired the investment properties with the intention of receiving passive income, however were left with properties unrenovated and mired with expenses including but not limited to taxes, city fines and costs, utility bills forcing them manage it from across the globe.

## PARTIES

14.     Defendant, ABC Capital Investments, LLC is a Pennsylvania Limited Liability Company operates an investment vehicle for individuals to acquire real estate located, renovated and managed by the company and its affiliates for overseas clients.

15.     Defendant, ABC Capital Realty, LLC is a Pennsylvania Limited Liability Company operates an investment vehicle for individuals to acquire real estate located, renovated and managed by the company and its affiliates for overseas clients.

16.     Defendant, Giovanni Real Estate, LLC is a Pennsylvania Limited Liability Company which operates an investment vehicle for individuals to acquire real estate located, renovated and managed by the company and its affiliates for overseas clients.

17.    Defendant, New Philly Construction, LLC is a Pennsylvania Limited Liability Company which operates an investment vehicle for individuals to acquire real estate located, renovated and managed by the company and its affiliates for overseas clients.

18.    Defendant, Stateside-Philly, LLC is a Pennsylvania Limited Liability Company which operates an investment vehicle for individuals to acquire real estate located, renovated and managed by the company and its affiliates for overseas clients.

19.    Defendant, Philly Acquisitions, LLC is a Pennsylvania Limited Liability Company which operates an investment vehicle for individuals to acquire real estate located, renovated and managed by the company and its affiliates for overseas clients.

20.    Defendant, Jason "Jay" Walsh, is the co-founder and partner of ABC Capital Investments, LLC, a Pennsylvania Limited Liability Company that operates as an investment vehicle for individuals to acquire real estate located, renovated and managed by the company and its affiliates for overseas clients.

21.    Defendant, Karen Lee-Walker, is an agent of ABC Capital Investments, LLC, a Pennsylvania Limited Liability Company that operates as an investment vehicle for individuals to acquire real estate located, renovated and managed by the company and its affiliates for overseas clients.

22.    Defendants in paragraphs 15 – 21 are hereinafter referred to as "ABC."

23.    Plaintiff American Hypnotherapy Society, LLC is a Pennsylvania Limited Liability Company formed by Defendants for the benefit of a foreign investor to acquire 1536 S. Marston Street in Philadelphia County of Pennsylvania.

4

24.     Plaintiff Bestview, LLC is a Pennsylvania Limited Liability Company formed by Defendants for the benefit of a foreign investor to acquire 6111 Wheeler St. and 502 E. Courtland Street in Philadelphia County of Pennsylvania.

25.     Plaintiff Burwood International Investment, LLC is a Pennsylvania Limited Liability Company formed by Defendants for the benefit of a foreign investor to acquire 2934 N. Ringgold Street in Philadelphia County of Pennsylvania.

26.     Plaintiff CAN Solution, LLC is a Pennsylvania Limited Liability Company formed by Defendants for the benefit of a foreign investor to acquire 2030 Plum Street in Philadelphia County of Pennsylvania.

27.     Plaintiff D&E HK Company, LLC is a Pennsylvania Limited Liability Company formed by Defendants for the benefit of a foreign investor to acquire 38 N. Frazier St. in Philadelphia County of Pennsylvania.

28.     Plaintiff Eddie Luk Investments, LLC is a Pennsylvania Limited Liability Company formed by Defendants for the benefit of a foreign investor to acquire 116 N. 53rd Street and 2955 N. Bambrey Street in Philadelphia County of Pennsylvania.

29.     Plaintiff Fortune Well, LLC is a Pennsylvania Limited Liability Company formed by Defendants for the benefit of a foreign investor to acquire 5561 Chancellor Street in Philadelphia County of Pennsylvania.

30.     Plaintiff IP Global Investment, LLC is a Pennsylvania Limited Liability Company formed by Defendants for the benefit of a foreign investor to acquire 1830 E. Airdrie Street in Philadelphia County of Pennsylvania.

5

31.   Plaintiff Jessie Investments, LLC is a Pennsylvania Limited Liability Company formed by Defendants for the benefit of a foreign investor to acquire 5930 Belmar Street in Philadelphia County of Pennsylvania.

32.   Plaintiff Lawrence Simple Homes, LLC is a Pennsylvania Limited Liability Company formed by Defendants for the benefit of a foreign investor to acquire 5715 Malcolm Street in Philadelphia County of Pennsylvania.

33.   Plaintiff LPES Investments, LLC is a Pennsylvania Limited Liability Company formed by Defendants for the benefit of a foreign investor to acquire 1153 S. 54th Street in Philadelphia County of Pennsylvania.

34.   Plaintiff Nadiahon, LLC is a Pennsylvania Limited Liability Company formed by Defendants for the benefit of a foreign investor to acquire 4357 N. 7th Street in Philadelphia County of Pennsylvania.

35.   Plaintiff PLES Investments, LLC is a Pennsylvania Limited Liability Company formed by Defendants for the benefit of a foreign investor to acquire 5213 Westminster Street in Philadelphia County of Pennsylvania.

36.   Plaintiff PR Forever Win, LLC is a Pennsylvania Limited Liability Company formed by Defendants for the benefit of a foreign investor to acquire 553 S. Salford Street, 5856 Angora Terrace and 6345 Wheeler Street in Philadelphia County of Pennsylvania.

37.   Plaintiff Samfield, LLC is a Pennsylvania Limited Liability Company formed by Defendants for the benefit of a foreign investor to acquire 311 E. Albanus Street in Philadelphia County of Pennsylvania.

38.     Plaintiff SELP Investments, LLC is a Pennsylvania Limited Liability Company formed by Defendants for the benefit of a foreign investor to acquire 5624 N. 10th Street in Philadelphia County of Pennsylvania.

39.     Plaintiff Standing Moai Investment, LLC is a Pennsylvania Limited Liability Company formed by Defendants for the benefit of a foreign investor to acquire 853 N. 47th Street in Philadelphia County of Pennsylvania.

40.     Plaintiff Tinwan Company, LLC is a Pennsylvania Limited Liability Company formed by Defendants for the benefit of a foreign investor to acquire 1944 E. Birch Street and 2520 S. Felton Street in Philadelphia County of Pennsylvania.

41.     Plaintiff Touch Blessing, LLC is a Pennsylvania Limited Liability Company formed by Defendants for the benefit of a foreign investor to acquire 2612 S. Bonaffon St. Street in Philadelphia County of Pennsylvania.

42.     Plaintiff Vania Bright, LLC is a Pennsylvania Limited Liability Company formed by Defendants for the benefit of a foreign investor to acquire 5441 Spruce Street and 1363 Unity Street in Philadelphia County of Pennsylvania.

43.     Plaintiff Whole Win Assets, LLC is a Pennsylvania Limited Liability Company formed by Defendants for the benefit of a foreign investor to acquire 121 N. Vogdes Street in Philadelphia County of Pennsylvania.

44.     Plaintiff Whole Win Capital, LLC is a Pennsylvania Limited Liability Company formed by Defendants for the benefit of a foreign investor to acquire 3629 N. Bouvier Street in Philadelphia County of Pennsylvania.

45.     Plaintiff Wind See, LLC is a Pennsylvania Limited Liability Company formed by Defendants for the benefit of a foreign investor to acquire 4931 Hoopes Street in Philadelphia County of Pennsylvania.

46.     Plaintiff Y L Tang Co., LLC is a Pennsylvania Limited Liability Company formed by Defendants for the benefit of a foreign investor to acquire 4851 N. Hutchinson Street in Philadelphia County of Pennsylvania.

47.     Plaintiff InvestRealty II, LLC is a Pennsylvania Limited Liability Company formed by Defendants for the benefit of a foreign investor to acquire 1428 W. York Street in Philadelphia County of Pennsylvania.

48.     Plaintiff InvestRealty III, LLC is a Pennsylvania Limited Liability Company formed by Defendants for the benefit of a foreign investor to acquire 5716 Commerce Street; 3634 N. 19th Street; and 4670 Mulberry Street in Philadelphia County of Pennsylvania.

49.     Plaintiff Sidney Shuay is an individual who resides at 33 Avignon Drive, Morris Plains, NJ 07950 who acquired property address 1607 Harrison Street in Philadelphia County of Pennsylvania.

50.     Plaintiff Alphabet Philly, LLC is a Pennsylvania Limited Liability Company formed by Defendants for the benefit of a foreign investor to acquire 4850 N Brown Street in Philadelphia County of Pennsylvania.

51.     Plaintiff JD CPW, LLC is a Pennsylvania Limited Liability Company formed by Defendants for the benefit of a foreign investor to acquire 1955 73rd Street in Philadelphia County of Pennsylvania.

52.     Plaintiff Land Winner, LLC is a Pennsylvania Limited Liability Company formed by Defendants for the benefit of a foreign investor to acquire 521 N. 58th Street in Philadelphia County of Pennsylvania.

53.     Plaintiff Loveg, LLC is a Pennsylvania Limited Liability Company formed by Defendants for the benefit of a foreign investor to acquire 105 N. Felton Street; 1332 N. 59th Street; and 3063 N. 26th Street in Philadelphia County of Pennsylvania.

54.     Plaintiff Mana International, LLC is a Pennsylvania Limited Liability Company formed by Defendants for the benefit of a foreign investor to acquire 1438 N. 27th Street in Philadelphia County of Pennsylvania.

55.     Plaintiff TOUT USA, LLC is a Pennsylvania Limited Liability Company formed by Defendants for the benefit of a foreign investor to acquire 1617 Wakeling Street; 1532 N. Felton Street; and 4723 N. 15th Street in Philadelphia County of Pennsylvania.

56.     Plaintiffs in paragraphs 23 – 55 are hereinafter referred to as the "Foreign Investors" or "Plaintiffs."

## FACTS
### ABC'S INVESTMENT ENTERPRISE

57.     ABC Capital Investments, LLC ("ABC") is a business which owns, operates or manages properties through various related entities with the purpose of selling them to individuals in exchange for a guaranteed return of their investment. Each purchaser ("Investor") enters into an Agreement of Sale and Property Management Agreement with ABC and its affiliates for the renovation, management and/or collection of rent based upon their dollars invested and property selected.

58.     ABC uses its website as well as other digital marketing mechanisms such as YouTube to advertise its business practices. The website www.abccapitalinvestments.com explicitly

9

guaranteed a fixed return through guaranteed rental income on all acquisitions with a "Passive Income with Turn-Key Rental." Moreover, ABC describes their business as "hands off real estate" catering to clients outside of Pennsylvania and many being international with high returns on investment of "10% - 40%".

59.     Upon agreeing to terms on a property, ABC and the Investor entered into an Agreement of Sale utilizing the Pennsylvania Association of Realtors' Standard Agreement for the Sale of Restate ("Agreement of Sale or AOS"). An Addendum to the AOS includes a warranty on behalf of ABC for the following:

   a.   3-year warranty for all maintenance costs;
   b.   Roof warranty for 15 years;
   c.   Guaranteed rent for 3 years (the amounts of guaranteed rent is varied per transaction);
   d.   Statement regarding new tenant will be secured at no costs to the client for the first 3 years, if current tenant relocates;
   e.   Investor has no obligation for payment to secure tenants for first 3 years;
   f.   Inspection rights for the investor after the completion of any renovations;
   g.   A warranty for all of the above rights are provided by ABC as well as the other co-defendants for whom they share same ownership which include but is not limited to: ABC Capital Realty, LLC, Giovanni Real Estate, LLC, New Philly Construction, LLC, Stateside- Philly, LLC and Philly Acquisitions, LLC.

60.     To complete the transaction, ABC creates Limited Liability Companies for the Foreign Investor used as a conduit in purchasing the property in question from ABC.

61.     At closing, the Investor enters into a Property Management Agreement ("PMA") with ABC or an affiliate, setting forth the fixed return amount the Investor is to receive per year based upon rents collected solely upon the efforts of ABC and its affiliates.

62.     Additionally, the PMA contains exhibits for the calculated amount of the annual net return and a buyback option for the Investor to sell the property back to ABC.

63.     At closing, the Investor pays the agreed upon fixed acquisition cost along with the closing costs necessary to transfer the property to the newly formed entity.

64.     In certain transactions, ABC provides renovation services for the property necessary to receive returns from expected rental income. In these transactions, the Investor is responsible for the payment of such costs at closing.

65.     At closing, the Investor does not take control of the property, but instead the property is controlled by ABC as set forth in the PMA to provide the monetary return as set forth in its documents.

## DEFENDANT'S RACKETEERING ACTIVITIES

66.     From 2012 – 2019, ABC sold properties to the Foreign Investors with assurances and covenants they had no expectation of satisfying.

67.     ABC initiated a business relationship with Jubilee Capital Limited ("Jubilee"), a real estate brokerage firm serving clientele in Asia (particularly Hong Kong) to purchase investment properties.

68.     ABC's Chief Operating Officer Jay Walsh negotiated a brokerage agreement with Jubilee for Jubilee's assistance in securing his international.

69.     ABC made the following false statements to Jubilee:

a.      All investors would receive a guaranteed 3-year payment of rental income;
b.      All investors would have the ability to sell back their property with no restrictions at the conclusion of the 3-year property management term; and
c.      All renovations would be completed within the timeframes set forth in the closing documents and would be completed sufficiently to secure new tenants necessary to deliver the investor's their guaranteed returns.

70.     In reliance on the commission based brokerage agreement, Jubilee began soliciting its foreign clientele with ABC's investment opportunities.

71.     To date, ABC refuses to pay Jubilee's commission which now exceeds Fifty Thousand Dollars ($50,000).

72.     ABC and its related entities fraudulently collected renovation costs and management fees refusing to provide the Foreign Investors an annual return as agreed upon.

73.     First, ABC would discontinue the monthly rental income to be provided to the Investor as within months of entering into the PMA.

74.     When questioned regarding the rental income, ABC would make excuses and claims about the City of Philadelphia's Licenses and Inspections department delaying their ability to rent the properties.

75.     From the time period of 2012 through 2019, ABC was responsible for more than $1M in rental income owed to the Foreign Investors for which less than $200,000.00 was distributed.

76.     In addition to failing to make the rental income payments, ABC also failed to renovate the properties consistent with the agreement and/or failed to manage the maintenance of the properties including real estate taxes, utilities' costs and numerous L&I violations.

77.     For example. Plaintiff PLES Investments paid more than $51,000 for renovations in July 2017, however, in two years the property remained boarded up and inhabitable. *See Exhibit A.*

78.     In addition to taking the Investor's money for renovations without completing the repairs, ABC and its affiliates refused to pay utilities and maintenance expenses which became borne upon the Foreign Investors.

79.     In fact, multiple Foreign Investors incurred thousands of dollars in costs to maintain their properties including but not limited to real estate taxes, utilities expenses and L&I fines based upon the ABC's renovations failing to meet the City's regulations.

80.     ABC was able to perpetuate their scheme against the Investors because the registered addresses of the Foreign Investor's entities were properties controlled, owned or managed by ABC.

81.     Based upon this control, ABC was able to continue the perpetuation of their fraudulent schemes, as the Foreign Investors were never received the various correspondences from the City regarding these issues.

82.     In addition to controlling the registered offices of the Foreign Investor, ABC also owned, managed, or controlled the related parties responsible for property management and renovations.

83.     ABC was able to continue this fraud by utilizing funds retrieved from new investors for other properties, to then pay off its pre-existing obligations.

84.     In fact, whenever an Investor attempted to utilize ABC's buyback option per the closing documents, the Foreign Investors were delayed until ABC was able to find a new investor to purchase the property.

85.     However, as new clients became scarce, ABC thereafter refuted on its obligations to make their annual returns and other terms of their investment.

86.     By controlling the related entities responsible for the repairs of the property and using new client's investments to repay the Investors' annual returns, ABC was able to disguise the source of the funds and/or the status of the properties capable of collecting the rental return.

### DEFENDANTS MISREPRESENTED RENTAL INCOME BEING COLLECTED UNDER THE INVESTMENT CONTRACTS

87.     Per the Closing Documents, Foreign Investors were scheduled to receive monthly returns from rental income collected by Defendants. In some instances, these amounts were guaranteed.

88.     Investors received monthly returns from alleged renters, however, many properties were never renovated and were inhabitable.

13

89. Plaintiff, Burwood International Investment, LLC ("Burwood") acquired property from Defendants in April 2016 for property 2934 N. Ringgold Street ("Ringgold Property") including Twenty Eight Thousand and Five Hundred ($28,500) of renovation costs.

90. ABC entered an AOS and PMA with Burwood consistent with its investment practices guaranteeing rental returns for 3 years at $725.00 per month, no maintenance costs, and ABC to serve as the Property Manager responsible for all property expenses. *See Exhibit B.*

91. For 2016 and 2017, ABC failed to make any rental income payments to Burwood.

92. However, in 2018 ABC began allegedly collecting rental payments from a tenant for the Ringgold Property in the amount of $725.00 per month.

93. ABC sent monthly statements to Burwood detailing $725.00 per month of rental payments and expenses of $179.50, with a net return to Burwood of $545.50. *See Exhibit C.*

94. Despite ABC's statements for thirteen months of alleged returns, the Ringgold property was never repaired and there were no tenants ever occupying the property.

95. In September 2018, while ABC allegedly collected $725.00 per month for rent the Ringgold Property had boarded windows and doors and a poster from Philadelphia's Licenses and Inspection forbidding entrance into the property. *See Exhibit D.*

96. The Ringgold Property remains in the same condition as of September 2019.

97. In addition, in February 2018 the Philadelphia Licenses and Inspections cited the Ringgold Property for several violations including having a vacant land structure without a license. *See Exhibit E.*

98. The practices of providing false rental income payments to the Foreign Investors created a false belief the Investment Enterprise was generating revenue.

99.     The distribution of false rental income were assurances to the Foreign Investor their investment was generating income as expected and falsely represented the viability of their investment.

100.    For 2018, Defendants submitted statements demonstrating payments owed to Foreign Investors from rental income in excess of $250,000 for approximately thirty-one separate properties.

101.    Despite the Investors receiving positive returns from Defendants, at least twenty of the respective properties during this time period had invalid rental licenses. Therefore, the Defendants were illegally renting the properties if at all.

102.    However, upon additional investigation during this same time period at least eleven properties were vacant and received Licenses & Inspections violations for failing to maintain a vacant property license.

103.    Defendants misled the Investors to believe during this period the Investment Enterprise was generating income however, most of the properties could not lawfully rent the premises and at least one-third of the properties were abandoned and/or vacant.

### DEFENDANT'S MISREPRESENTED RENOVATIONS COSTS TO FURTHER THE INVESTORS' INVESTMENT AS THE FUNDS WERE NOT USED TO RENOVATE THE PROPERTIES

104.    In addition to misrepresenting the existence of rental income, the Defendants collected renovation costs for properties which were never renovated.

105.    Plaintiff, Land Winner invested Thirty-Eight Thousand and Five Hundred Dollars ($35,500) with Defendants by acquiring property address 521 N. 58th Street, Philadelphia, PA 19131 ("58th Street Property") on July 7, 2016. *See Exhibit F.*

106.    In the AOS, Defendants agreed to warranty the guaranteed rental income of $1,250 for 3 years, roof warranty for 15 years and a property maintenance warranty for 3 years with no additional costs to the Investor. *See Exhibit G.*

107.    In addition to the acquisition costs, Land Winner paid an additional Fifty-Nine Thousand and Five Hundred Dollars ($59,500) to Defendant, New Philly Construction for renovations costs to generate income as part of the Investment.

108.    Since the closing on July 7, 2016, Defendants failed to perform any renovations to the 58th Street Property despite misleading Land Winner by providing rental income in 2018.

109.    From March 2018 until January 2019, Defendants issued monthly statements to Land Winner acknowledging $1,250.00 monthly of rental income. *See Exhibit H.*

110.    However, as of September 2019 the 58th Street Property was in the same abandoned and inhabitable state prior to the Investor's investment in 2016. *See Exhibit I.*

111.    Moreover, Defendants failed to apply for a rental license to rent the property throughout this term and received numerous Licenses and Investigations code violations for failing to have a vacant property license.

112.    These deceitful practices demonstrated with the Foreign Investors were a consistent practice by the Defendants' in its dealings within the Investment Enterprise.

### DEFENDANT'S MISREPRESENTED THE PAYMENT OF PROPERTY EXPENSES THAT WERE DEDUCTED FROM RENTAL INCOME COLLECTED

113.    Defendants fraudulently maintained the Foreign Investor's property by deliberately failing to pay expenses associated with maintaining the premises such as utilities, code enforcement violations and taxes.

114.    As advertised in Defendants' solicitation, the Investors' investment was a "hands-off property" with Defendants maintaining the investment properties.

16

115.     Despite these assurances, the Defendants deliberately used the investment funds and any rent collected for their own personal benefit.

116.     Plaintiff, Mana International ("Mana") acquired 1438 S. 27th Street, Philadelphia, PA 19146 on December 1, 2014 for a purchase price of $71,600 ("27th Street Property").

117.     Mana entered a PMA and AOS which mandated Defendants were responsible for all maintenance for 3 years as well as guaranteed fixed rental income for the same period. *See Exhibit J.*

118.     Defendants had zero intentions to maintain the 27th Street Property as the real estate taxes were not paid from 2014 through 2017.

119.     Despite their obligations, Defendants allowed the 27th Street Property to become delinquent in Philadelphia Real Estate taxes and a petition to sell was filed by the City of Philadelphia's collection firm. *See Exhibit K.*

120.     All notices and/or filings were served upon the 27th Street property, which was exclusive controlled, managed and operated by Defendants.

121.     However, Defendants did not respond to any of the court's notices and the property was sold via Sheriff's sale on/or about July 9, 2019. *See Exhibit K.*

122.     Despite its pending foreclosure, Defendants issued Rental Statements ("Statement") to Mana during 2018 identifying rental income of $900/month. *See Exhibit L.*

123.     In addition to the Property Manager's 10% fee, the Defendants were also deducting from the rental income payment of taxes, which were never paid. *See Exhibit L.*

124.     Defendants carried on this practice of fraudulently billing for taxes, utilities and other maintenance items to the Investors through the Statements, however they were not paying the respective debts.

125.    Instead, Defendants were using the monies received to continue its fraudulent enterprise and distributing fraudulent returns to incoming investors.

### DEFENDANT'S MISREPRESENTED THE BUYBACK PROVISIONS OF THE INVESTMENT CONTRACTS

126.    Defendants misrepresented the buyback provisions set forth in the Investment Contracts thereby defrauding the Investors who attempted to withdraw from the Investment Enterprise.

127.    Defendants provided the Foreign Investors a buyback option providing the Foreign Investors a security to ensure they would not lose money in the Investment Enterprise.

128.    The buyback option would be predominantly found in the PMA however, it was also present in some Investors AOS. *See Exhibit M.*

129.    Despite having a buyback option, the Defendants would refuse to honor the established pre-set price or the Foreign Investors would incur a significant loss in selling the property to Defendants.

130.    Plaintiff, IP Global Investment, LLC ("IP Global") acquired 1830 E. Airdrie Street, Philadelphia, PA 19124 on/or about January 26, 2015 for a purchase price of $68,000 ("Airdrie Street Property").

131.    After three years of receiving none of the promises set forth by the Defendants, IP Global's members, Ngai Wing Lui and Hoi Wah Leung entered into an agreement with Defendants to sell the Airdrie Street Property for a purchase price of $68,000.

132.    IP Global's buyback Option executed on January 26, 2015, states:

> "ABC Capital Investments, LLC will buyback 1830 East Airdrie, Phila., PA in the amount of $68,000. The buyback will be exclusively offered from the end of this property management agreement for 3 months. The offer will expire at the end of the 90th day after the expiration of the property management agreement. You must elect this option by noticing ABC in writing. ABC will have 60 days from notice to close (complete the buyback)."

133.    Due to ABC's failure to comply with the Investment Enterprise, IP Global elected this

buyback option and re-sold the Airdrie Property to Defendants for $68,000.

134.    However, due to IP Global's members being international residents, a Power of Attorney

was executed to allow Defendants, explicitly Jason Walsh and Karen-Lee Walker authority

execute the necessary documents to carry out this sale.

135.    Despite the agreed upon buyback price, Defendants reduced the sales price at closing and

included an additional Sixteen Thousand Dollars ($16,000) in unwarranted closing costs. ∿

136.    Defendant Karen-Lee Walker as agent for Defendants executed the closing documents to

sell the Airdrie Street Property with fraudulent costs in furtherance of the ongoing fraud.

137.    As a result of Defendants fraudulently reducing IP Global's buyback price, the Defendants

were able to receive an additional unwarranted Twenty-Seven Thousand ($27,000). ∿

138.    Defendants used this practice and procedure with other Foreign Investors as an attempt to

deprive, defraud and/or deter the Foreign Investors from reselling their property to the Defendants.

**COUNT I**
**VIOLATION OF §10(B) OF THE 1934 ACT AND RULE 10B-5**

139.    Plaintiff incorporates paragraphs 1 – 138 by reference.

140.    During the relevant periods of 2012 – present, the Defendants disseminated or approved

the false statements specified above, which they knew or deliberately disregarded were misleading

in that they contained misrepresentations and failed to disclose material facts necessary to make

the statements made, in light of the circumstances under which they were made, not misleading.

141.    Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

     a.    employed devices, schemes and artifices to defraud;
     b.    made untrue statements of material facts or omitted to state material facts necessary
            in order to make the statements made, considering the circumstances under which
            they were made, not misleading; or

c.   engaged in acts, practices and a course of business that operated as a fraud or deceit upon Plaintiffs in connection with their purchase of the investment properties as part of the investment enterprise.

## COUNT II
## FEDERAL CIVIL RICO, 18 U.S.C. § 1962 (C)

142.   Plaintiffs incorporate by reference all of the preceding paragraphs of this Complaint as if fully set forth herein.

143.   Defendants violated RICO and Plaintiffs were injured as a result.

144.   Each Defendant is a "person" capable of holding legal or beneficial interest in property within the meaning of 18 U.S.C. §1961 (3).

145.   Each Defendant violated 18. U.S.C. § 1962(c) by the acts described in the prior paragraphs, and as further described below.

146.   **The Enterprise**

Defendants, ABC Capital Investments, LLC, ABC Capital Realty, LLC, Giovanni Real Estate, LLC, New Philly Construction, LLC, Stateside-Philly, LLC, Philly Acquisition, LLC, Jason Walsh and Karen Lee-Walker acted together to form an association-in fact for the common and continuing purpose described herein and constitute an enterprise within the meaning of 18 U.S.C. § 1961(4) engaged in the conduct of their affairs through a continuing pattern of racketeering activity. The members of the enterprise functioned as a continuing unit with an ascertainable structure separate and distinct from that of the conduct of the pattern of racketeering activity. There may also be other members of the enterprise who are unknown at this time.

147.   **Pattern of Racketeering Activity**

Defendants, each of whom are persons with, or employed by, the enterprise, did knowingly, willfully and unlawfully conduct or participate, directly or indirectly in the affairs of

20

the enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1), 1961 (5), and 1962(C). The racketeering activity was made possible by Defendants' regular and repeated use of the facilities and services of the enterprise. Defendants had the specific intent to engage in the substantive RICO violation engaged herein.

148.    Predicate acts of racketeering activity are acts which are indictable under provisions of the U.S. Code enumerated in 18 U.S.C. § 1961(1)(B), as more specifically alleged below. Defendants each committed at least two acts or else aided and abetted such acts.

149.    The acts of racketeering were not isolated, but rather the acts of Defendants were related in that they had the same or similar purpose and result, participants, victims and method of commission. Further, the acts of racketeering by Defendants have been continuous. There was repeated conduct during a period beginning in approximately 2012 and continuing to the present, and there is a continued threat of repetition of such conduct.

150.    The association-in-fact enterprise and the alternative enterprises, as alleged herein, were not limited to the predicate acts and extended beyond the racketeering activity. Rather, they existed separate and apart from the pattern of racketeering activity for the legitimate business purpose of providing real estate investment vehicles to the Plaintiffs and possibly other customers. Defendants have had and do have, upon information and belief, legitimate plans outside of the pattern of racketeering activity.

151.    Plaintiffs specifically allege Defendants participated in the operation and management of the association-in-fact enterprise and the alternative enterprises by overseeing and coordinating the commission of multiple acts of racketeering as described below.

152.    **Predicate Act: Use of Mails and Wires to Defraud the Investors in violation of 18 U.S.C §§1341 and 1343**

21

Defendants committed acts constituting indictable offenses under 18 U.S.C §§1341 and 1343 in that they devised or intended to devise a scheme or artifice to defraud the Investors or to obtain money from the Investors by means of false or fraudulent pretenses, representations or promises. For the purpose of executing their scheme or artifice, Defendants caused delivery of various documents and things by the U.S. mails or by private or commercial interstate carriers or receive such therefrom. Defendants also transmitted or caused to be transmitted by means of wire communication in interstate or foreign commerce various writings, signs and signals. The acts of Defendants set forth above were done with knowledge that the use of the mails or wires would follow in the ordinary course of business, or that such use could have been foreseen, even if not actually intended. These acts were done intentionally and knowingly with the specific intent to advance Defendants' scheme or artifice.

150.    Defendants carried out their scheme in different states and countries and could not have done so unless they used U.S. mails or private or commercial interstate carriers or interstate wires. In furtherance, of their scheme alleged herein, Defendants communicated amongst themselves and with the Plaintiffs in furtherance of the scheme to defraud Plaintiffs. These communications were typically transmitted by wire (i.e. electronically) and/or through United States mails or private or commercial carriers. Defendants also transmitted or caused the fraudulent Rental Income Statements, Agreement of Sales and Property Management Agreements by mail or wire between 2012 and the present and upon information and belief, to the Investors for the purposes of negotiating and acquiring the investment properties.

151.    **Predicate Act: Fraud in the sale of securities**

Defendants committed acts constituted fraud in the sale of securities in the fraudulent representations in the sale of the investment contracts between Defendants and Plaintiffs.

Defendants made material misleading representation regarding the purchasing of the investment contracts by the Plaintiffs between 2012 and the present. Defendants made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or engaged in acts, practices and a course of business that operated as a fraud or deceit upon Plaintiffs in connection with their purchase of the investment properties as part of the investment enterprise.

152.    **Continuity of Conduct**

Defendants' violations of state and federal law as set forth herein, each of which directly and proximately injured Plaintiffs constitute a continuous course of conduct spanning a period from 2012 through the present which was intended to obtain money through false representations, fraud, deceit and other improper unlawful means. Therefore, said violations were a part of a pattern of racketeering activity under 18 U.S.C. § 1961(1) and (5).

### COUNT III
### FRAUD

153.    Plaintiffs incorporate by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

154.    As alleged above, ABC engaged in a scheme to defraud the Investors, and engaged in acts, practices, or courses of business that operated as a fraud upon the Investors.  In carrying out this fraud, ABC engaged in a great deal of deceptive acts in furtherance of the scheme.

155.    ABC used Investor funds to make regular and/or requested distributions to Investors, which reinforced the false narrative that the Investors' funds were profitably invested and available to withdraw.

156.    This false narrative enabled ABC to convince Investors to keep their money invested and/or re-invest when their existing investments purportedly "matured."

157. At all relevant times, ABC acted knowingly or recklessly in carrying out this fraud.

158. By engaging in the conduct described above, ABC, directly or indirectly, in connection with the purchase or sale of a security, and by the use of means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange:

        a.     employed devices, schemes, or artifices to defraud; and
        b.     engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

159. ABC knew, or was reckless in not knowing, that it employed devices, schemes or artifices to defraud and engaged in acts, practices, or courses of business that operated as a fraud upon other persons by the conduct described above.

160. By engaging in the conduct described above, ABC violated, and unless enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rules 10b-5(a) and 10b-5(c) thereunder [17 C.F.R. §§ 240.10b-5(a) & 240.10b-5(c)].

## COUNT IV
### BREACH OF CONTRACT

161. Plaintiffs incorporate by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

162. At all times relevant to this litigation, Defendants were in a contractual relationship with Plaintiffs and owed a duty to Plaintiffs to act in good faith and deal fairly with them.

163. Defendants breached that duty on more than one occasion by wrongfully converting, taking, utilizing or managing property and financial interests of Plaintiffs.

164. Defendants breached their responsibilities in the Closing Documents including but not limited to:

        a.  Failing to distribute the guaranteed rental income;
        b.  Failing to pay maintenance costs (including but not limited to utilities costs, real estate costs and code violations);

    c.  Failing to make renovations consistent with the PMA;

    d.  Failing to pay commission payments per the commission agreement;

165.    Such acts and omissions leading to the Defendants' breach of its duty to deal in good faith and fairly with Plaintiffs were the actual and proximate cause of harm to Plaintiffs.

165.    Defendants' conduct was outrageous, with its acts being done with malice or bad motives or reckless indifference to the interests of Plaintiffs.

**COUNT V**
**UNJUST ENRICHMENT**

166.    Plaintiffs incorporate by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

167.    At all times relevant to this litigation, Defendants owed a legal duty to Plaintiffs to not unfairly or unduly take advantage of Plaintiffs or commit wrongful acts in order to unjustly enrich itself Plaintiffs' expense or at the expense of Plaintiffs' property or financial interests.

168.    During the period from approximately 2014 - 2019, Defendants unjustly enriched itself by wrongfully converting, taking, utilizing or managing the property and financial interests of Plaintiffs.

169.    Such acts and omissions leading to the Defendants' unjust enrichment were the actual and proximate cause of harm to Plaintiffs.

170.    Accordingly, Defendants are liable in damages to Plaintiffs in excess of $1,000.00, the exact amount to be proven at trial, arising out of Defendants' unjust enrichment.

Respectfully submitted,

**MFI Law Group, PLLC**

BY: _____

Mu'min F. Islam, Esq.
I.D. No. 208979
7433 Limekiln Pike, Ste. 210
Philadelphia, PA 19138
215-735-2357/Fax: 215-735-2358
mislam@mfilawgroup.com

DATED: December 23, 2019
*Attorney for Plaintiff*

26

## VERIFICATION

I, Alexander Cheung, as Representative for the Foreign Investors verify that the statements made in the foregoing *Plaintiff's Complaint* are true and correct to the best of my knowledge, information and belief. I understand that the statements therein are made subject to the penalties of 18 Pa.C.S. §4904 relating to unsworn falsification to authorities.

Alexander Cheung
Representative for the Foreign Investors